Martin, J.
It is admitted that the board had issued bonds to the full amount authorized by the statute before Davis delivered the bonds in suit to Sinton. It is also admitted that the bonds in suit had been previously redeemed and lifted by the board with intent thereby to extinguish them. If the board is still liable upon them, it must be because of their continued vitality since the original issue, or because their delivery to Sinton was under such circumstances as to amount in law to a re-issue. For delivery or its equivalent is essential to every obligatory instrument. The important facts are, that when redeemed by the board, and when delivered to Sinton, the bonds were not due; that they were then uncanceled, and that they were accepted by Sinton from Davis as private owner and without inquiry.
Payment by anticipation, it is claimed, did not extinguish them, and produced no other effect than that of a discount or purchase by a stranger. Reliable authorities in support of this, as a general proposition, are cited by counsel. It must be conceded that notwithstanding the purchase or redemption of his own note by the maker before maturity he may re-issue it, o.r so conduct himself in respect to it that he will be estopped to defend as against an innocent purchaser. But the statute, by providing for an annual tax, and the sale of the old school property, and the application of the fund of an uncertain amount to the erection of the *511 new building, fairly contemplates payment in advance, and therefore authorizes it. But as we understand the doctrine, it has no application to the' facts of this case. A natural person has unrestricted power to issue and re-issue. Such is not the case with this board. In State v. Powers, 38 Ohio St., 54, McIlvane, J., defines school districts under our system “as mere subdivisions of the state for political purposes, as mere agencies of the state in the administration of public laws.” And again he says: “ The district is organized as a mere agency of the state in maintaining its public schools, and all its functions are of a public nature.” In the same connection that eminent Judge further remarks: “ Many of the powers and franchises of municipal corporations are of a private and local character, essentially different from those of mere political subdivisions of the state, commonly called quasi corporations.”
By general statute school boards are authorized under precise limitations and conditions precedent to issue bonds for certain specific purposes. That power was not invoked in this instance. And the only authority is that recited in the bond, viz: the special act of May 7th, 1869. By that act they were authorized to issue bonds not exceeding in the aggregate $20,000. In September, 1869, they had issued to the full amount. Their authority was then exhausted. There can be no pretence of any further or other authority to issue. In executing this authority an incidental re-issue would of course be unimportant. The same paper could serve successive turns whilst the authority was in existence; but when the sales in the aggregate reached the prescribed limit the authority was at an end; and the board then had no greater right than a stranger to create an indebtedness by bond or otherwise under the statute. It follows that when the bonds were redeemed in 1874 tti^y" were extinguished and incapable of re-issue. No new bond could be issued for want of authority; and for the same reason a retired bond could not be re-issued, and payment by antiei'pation was extinguishment in law. Of the authorities ¡referred to, some relate to corporations at common law, *512 whose powers rest in prescription, others to trading corporations, whose capacity within the general scope of their business is about as free as that of a natural person; and others again relate to municipal corporations in exceptional situations, or when the power to contract the debt is conceded, and the right to give a commercial security therefor is questioned. They throw but little light on the question under consideration. The general rule, however, is well settled that such power must be conferred and strictly pursued. Other cases relating to the irregular exercise of the power are not in point. This view disposes of the case. But if this conclusion is wrong, the case presents another view which we consider as controlling. - The only ground which can plausibly be suggested for a recovery is the alleged negligence of the board in not seeing to it that the bonds were canceled. It is supposed to rest on the maxim that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it; The claim is, that by reason of that neglect the board is estopped to deny a reissue of the bonds. In McKinzie v. Steele, 18 Ohio St., 38, Judge. Welch lays down the rule as follows: “ To work an estoppel there must be prejudice to the party setting it up, and also fraud or bad faith — or their equivalent, gross negligence — in the party to be estopped.” At the outset we are met by the obvious objection that an estoppel concerning an alleged dereliction of a public officer is a novel mode of supplying a total want of statute power for purely public purposes. Waiving this objection we fail to discover in this record the slightest evidence of any negligence on the part of the board. In 1874 the treasurer reported the redemption of the bonds, and the board by formal order required him to canceFthem by punching or defacing the signatures. He was the accredited custodian of the paper. So far as known at that date his fitness, both as to character and com petency, was above suspicion. He was presumably the equal of his associates, and it was especially appropriate to intrust him with .that duty. As a matter of probability *513 before the fact, there was no ground to suspect any irregularity, much less a meditated embezzlement and criminal use of the paper. To require such unreasonable suspicion as between public officers in the discharge of routine duties would prove impracticable; and to declare it a legal duty, with the consequences claimed by counsel, would be to entail on taxpayers onerous liabilities for the private frauds and the crimes of delinquent officials. But grant there was some omission or negligence on the part of the board, was it of such a gross character, the equivalent of bad faith or fraud, as to bring it within the rule? Clearly not. Again, it was not the proximate cause of Sinton’s loss. His loss did not result as the natural and probable consequence of the alleged omission of duty. The direct and only cause was Davis’ crime. And in committing it he did not pretend to act as treasurer or director, or in any manner as agent of the board; nor did he so act. He acted, and professed to act solely for himself, and for his own advantage. And Sinton so understood it and trusted him accordingly.
But a conclusive answer to this claim of estoppel is found in the fact that Sinton is not an innocent holder. The bonds disclosed on their face that Davis was one of the directors; and as such might well have possession of the-paper without the right to dispose of it on his private account. Under these circumstances the duty of inquiry was put upon Sinton. And having taken the bonds without inquiry he was guilty in law of contributory negligence, and is not entitled to the position of an innocent purchaser. He dealt for his own gain with Davis alone, and trusted him at his peril; and we know of no principle of law that entitles him now to look to the taxpayers for reimbursement. 'In this connection I refer to the remarks of Judge Dickman in Strong v. Strauss, 40 Ohio St., 89, and of Judge Banter in Moores v. Bank, 15 Fed. Rep., 121.
Judgment reversed.